# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 20, 2010

Lyle W. Cayce
Clerk

No. 09-30034

CHET NUNEZ; WENDY NUNEZ

Plaintiffs-Appellants

v.

ALLSTATE INSURANCE COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM and STEWART, Circuit Judges, and FELDMAN, District Judge.[*]

CARL E. STEWART, Circuit Judge:

Chet and Wendy Nunez had flood and all-risk homeowner's policies with Allstate Insurance Co. when Hurricane Katrina destroyed their home. They made a claim under the policies and Allstate disbursed a payment. The Nunezes claim that Allstate paid them less than they were entitled to under the policies. The Nunezes were among 28 plaintiffs who filed suit against Allstate in St. Bernard Parish on September 24, 2007, seeking to recover for Hurricane Katrina-related damage to their homes. Allstate removed the case, and the

---

[*] District Judge, Eastern District of Louisiana, sitting by designation.

No. 09-30034

district court ordered the cases severed. The district court later granted Allstate's motion for summary judgment. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Prior to Hurricane Katrina, the Nunezes owned and occupied a home at 46 Packenham Avenue in Chalmette, St. Bernard Parish, Louisiana. Allstate insured the Nunezes' property through a flood policy and an all-risk homeowners insurance policy.

The Nunezes evacuated before Hurricane Katrina made landfall in Louisiana on August 29, 2005. Thus, they were not present during the storm and did not witness the damage to their home as it occurred. According to the Nunezes, their home was destroyed by rain, fire, and flood. The Nunezes believe that their home took at least eight feet of floodwater, reaching their ceilings.

The Nunezes received their flood policy limits of $75,000 for structure damage and $30,000 for contents. Under the homeowner's policy, Allstate additionally paid the Nunezes $19,856.08 for wind-related structural damage to the house, $1,135.69 for wind damage to other structures, $3,103.72 for wind damage to personal property, and $4,960 in additional living expenses.[1]

After the hurricane, the Nunezes moved to Houston and used the money they received from Allstate to buy a house for $172,000. The Nunezes gutted the Chalmette house and, much later, elevated it and did work to patch the roof. No further repair work has been done on the Chalmette property, but the Nunezes stated in their deposition testimony that they intend to someday repair and return to the property. Additionally, they received funding from the Road Home program and, in their application for that grant, attested that they planned to

---

[1] The Nunezes' homeowners policy limits were: $115,166 for Dwelling Protection, $11,517 for Other Structures Protection, and $80,617 for the Personal Property Protection - Reimbursement Provision.

keep their Chalmette home. On February 9, 2007, the Road Home program explained to the Nunezes that by verifying their intention to "keep the home," they committed themselves to "keep[ing] the damaged home and property [they] own (rather than selling it)" and "ensuring that the home remains owner-occupied for a specific period of time." Further, the Nunezes filed a successful appeal resisting the Parish's decision to demolish the home.

## B. Procedural History

On September 24, 2007, the Nunezes joined 26 other plaintiffs who filed suit against Allstate in St. Bernard Parish to recover unpaid Hurricane Katrina-related damages to their homes. After the case had been removed and the individual cases severed, the Nunezes filed their First Amended Complaint on March 18, 2008. The First Amended Complaint alleged that Allstate had only made partial payment for the damage caused by wind and wind-driven rain, and therefore still owed additional policy benefits for damage caused by wind. It further claimed that the Nunezes were entitled to additional recovery for the loss of the contents of their home and additional living expenses,[2] as well as for statutory penalties pursuant to Louisiana Revised Statutes §§ 22:658 and 22:1220.

The Nunezes furnished their expert report, from Mr. Steve Hitchcock, on October 8, 2008. Allstate filed motions to exclude the proposed expert testimony and for summary judgment on November 25, 2008.

In their motion for summary judgment, Allstate argued that the Nunezes had failed to meet their burden of producing evidence of segregable wind damages. Allstate further claimed that because the Nunezes did not repair or

---

[2] The Nunezes have waived their claims for loss of contents and additional living expenses because they failed to adequately brief the issues on appeal. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n. 1 (5th Cir. 2004) (citing FED. R. APP. P. 29(a)(9)(A)).

replace their property, their recovery was limited to the actual cash value of the property. Assuming an actual cash value of $113,914 (the highest estimate) minus an offset of $94,856.08 for the Nunezes' recovery under the flood policies, Allstate claimed that it could not owe more than $19,057.92 for structural damages—and they had already paid the Nunezes more than that amount.

On December 17, 2008, both Allstate's motions were granted in an order stating in full:

> Before the Court is Defendant's Motion for summary Judgment and Motion to Exclude Proposed Expert Testimony of Plaintiffs' Expert, both of which came on for hearing on December 10, 2008, with oral argument. After consideration of the motions, the briefs from both sides and the applicable law, the Court GRANTS both motions. *See Bayle v. Allstate* (2:08-cv-01319)[3] and *Williams v. Allstate* (2:08-cv-00062).[4]

---

[3] *See Bayle v. Allstate Ins. Co.*, No. 08-1319, 2008 WL 5054572 (E.D. La. Nov. 21, 2008). The facts of *Bayle* are similar to those of the present case—Hurricane Katrina victims sought to recover additional money under their Allstate homeowner's policy. *Id.* at *1. The *Bayle* court granted Allstate's Motion to Exclude Proposed Expert Testimony of Steve Hitchcock and granted summary judgment in favor of Allstate. *Id.* at *3. The court initially noted that the plaintiffs never repaired their home, therefore they could recover only the actual cash value of the property. *Id.* at 1. The court then concluded that because plaintiffs had offered no evidence to segregate covered from non-covered losses, their claims for additional structural damages, additional living expenses, and contents claims all failed. *Id.* at *2. Additionally, the court summarily held that plaintiffs were not entitled to damages for mental anguish or emotional distress under the homeowner's policy. *Id.*

[4] *See Williams v. Allstate Ins. Co.*, No. 08-0062, 2008 WL 5110604 (E.D. La. Nov. 26, 2008). The facts, holdings, and language of the opinion are virtually identical to *Bayle*. It appears that the *Nunez* court relies on *Williams* for its ruling to strike the testimony of plaintiff's expert. The court held, under Federal Rule of Evidence 702, that the plaintiff's expert's opinion (in support of segregating claims) regarding wind damage was unreliable because it was not based upon sufficient facts or data and was not the product of reliable principles and methods. *Id.* at *3.
The court opined:
> [The expert] rendered his two reports based solely on his visit to the dwelling (more than three years after the hurricane and after the damage had been repaired) and his interview of the dwelling owners (Plaintiffs). . . . There is simply no other paperwork to corroborate the accuracy of the dwelling owners' claim as described by them to the "expert".

*Id.* After striking the plaintiff's expert, the court then granted Allstate's motion for summary

The Nunezes timely filed a Notice of Appeal.

## II. STANDARD OF REVIEW

A summary judgment determination is reviewed *de novo*, viewing all evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The district court's determination of the admissibility of expert evidence is reviewed for abuse of discretion. *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Id.* If the district court abused its discretion, the harmless error doctrine applies, and the ruling will be reversed only if it affected the substantial rights of the complaining party. *Id.*

## III. DISCUSSION

Under Louisiana law, an insurance policy is a contract between the parties and should be interpreted according to the general rules of interpretation of contracts prescribed in the Louisiana Civil Code. *Smith v. Am. Family Life Assur. Co. of Columbus*, 584 F.3d 212, 215 (5th Cir. 2009). An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy. *Id.* (citing LA. REV. STAT. ANN. § 22:881 (2009)). "The words of a contract must be given their generally prevailing meaning." LA. CIV. CODE ANN. art. 2047 (2008). When the words of a contract are clear and explicit and

---

judgement because the plaintiffs had failed to segregate damages. *Id.*

No. 09-30034

lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LA. CIV. CODE ANN. art. 2046 (2008).

The Nunezes' homeowners policy provides:

5. How We Pay For A Loss

Under Coverage A—Dwelling Protection, Coverage B—Other Structures Protection and Coverage C—Personal Property Protection, payment for covered loss will be by one or more of the following methods:

. . .

b) Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis . . . You may make a claim for additional payment . . . if you repair or replace the damaged, destroyed or stolen property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. . . . we will make additional payment to reimburse you for cost in excess of actual cash value if  you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. . . .

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the building structure(s) for equivalent construction for similar use on the same premises;

2) the amount actually and necessarily spent to repair or replace the damaged building structure(s) with equivalent construction for similar use on the same residence premises; or

3) the limit of liability applicable to the building structure(s) as shown on the Policy Declarations for Coverage

A—Dwelling Protection or Coverage

B—Other Structures Protection,

regardless of the number of building structures and structures other than building structures involved in the loss.

If you replace the damaged building structure(s) at an address other than shown on the Policy Declarations through

construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

## A. Cost of Replacement

The Nunezes assert that they are entitled to recover replacement costs under their homeowner's policy because the policy expressly provides for replacing the damaged building through purchase of an existing structure. They claim that their purchase of the Houston home replaced the insured property, and that it is irrelevant that they intend to someday return to their Louisiana house.[5]

Allstate claims that the Nunezes did not replace their Chalmette property because they have gutted it, elevated it, and patched the roof. Although the Nunezes bought a new home after Hurricane Katrina, Allstate asserts that it is not a replacement of their damaged property because they accepted Road Home funds, they intend to someday repair and return to their original home, and they resisted the Parish's decision to demolish their home by filing an appeal.

Neither the homeowner's policy itself, nor Louisiana case law define the term "replace." Therefore, "[t]he words of [the] contract must be given their generally prevailing meaning." LA. CIV. CODE ANN. art. 2047. Replace means "to place again: restore to a former place, position, or condition" or "to take the place of: serve as a substitute for or successor of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Merriam-Webster, Inc. 1993). Presently, the

---

[5] Contrary to Allstate's claim, the Nunezes have not waived this issue. Their response to Allstate's motion for summary judgment clearly asserts that they are claiming replacement costs, and Wendy Nunez's affidavit attached to the response states that "We spent all the money that we received from Allstate through our homeowner's policy towards purchasing our new home in Houston, for which we paid $172,000."

Houston house serves the same function as the Nunezes' Chalmette house once did—as their primary residence. However, the Nunezes have attested that they intend to someday repair and return to the Chalmette house. Therefore, according to the plain meaning of the term "replace," the Nunezes' purchase of their Houston home does not constitute a substitute or replacement under the policy. The district court correctly concluded, as a matter of law, that the Nunezes could not recover under the replacement provision of the homeowner's policy.

### B. Burden of Proof on Covered v. Excluded Losses

The Nunezes argue that under Louisiana law, the insured must initially make a *prima facie* case of coverage, and the insurer then bears the burden of proving the applicability of an exclusionary clause within a policy by a preponderance of the evidence. The Nunezes claim that the district court's treatment of their case directly conflicts with this court's holding in *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290 (5th Cir. 2009).

However, the Nunezes have waived this issue on appeal because they never raised it before the district court. "An argument not raised before the district court cannot be asserted for the first time on appeal." *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008) (citing *Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000)).

In their response to Allstate's motion for summary judgment, the Nunezes in fact conceded that Allstate met its burden merely by showing that the home flooded, and that the burden then shifted to them to segregate covered and excluded damages.[6] The Nunezes argue that their concession was appropriate

---

[6] The Nunezes' response to Allstate's motion for summary judgment, filed December 5, 2008, states:

It is settled law that the burden of proving an exclusion is on the insurer. Allstate's position regarding wind and rain damage is that so long as an exclusion is shown to be implicated, the burden of proof shifts back to the

because placing the burden to segregate on the plaintiff was the settled law in the Eastern District of Louisiana at that time. But in their briefing before this court, the Nunezes discuss in-depth two Eastern District cases from 2007 that they assert correctly placed the burden to segregate on the insurer.

The Nunezes also argue that they did not waive the right to appeal because they stated the correct allocation of proof in their supplemental initial disclosures, in which they stated that:

> . . . it is defendant's burden to prove that any part of plaintiff's damage is caused by a peril excluded by the policy, e.g., flood. Therefore, at trial, plaintiffs intend to request the Court to reverse the order of proof and require defendant to prove if an excluded peril caused any damage to plaintiff's property. Plaintiffs will then be in a position to rebut this evidence by showing the specific details of roof and window damage, the amount of wind driven rain, the length of time before any flood waters reached plaintiff's property, etc.

As a general matter, however, supplemental initial disclosures are not filed with the court. And in fact, the district court's docket sheet does not reflect that the Nunezes' supplemental initial disclosures were ever filed with the court.

We therefore conclude that the Nunezes waived their right to argue on appeal that the district court erred with respect to the burden of proof to segregate covered from excluded losses.[7]

---

insured to prove damage caused by a non-excluded peril. This is simple enough in the context of flood versus wind/rain because it is conceded that there was flooding. However, vis-a-vis fire, Allstate has not met its burden of proof to show that the flood was implicated in the fire. Therefore, regarding fire damage, the burden has not shifted back to Plaintiffs; it has remained with Allstate and it would be impossible for Allstate to obtain summary judgment on its own burden of proof since Allstate has not introduced any evidence to do so.

[7] The Nunezes' claims for penalties pursuant to Louisiana Revised Statutes §§ 22:658 and 22:1220 must also fail because they have not established a valid, underlying breach of contract claim. *Clausen v. Fidelity & Deposit Co. of Md.*, 660 So.2d 83, 85 (La. Ct. App. 1995) ("a plaintiff attempting to base her theory of recovery against an insurer on these statutes must first have a valid, underlying, substantive claim upon which insurance coverage is based.").

No. 09-30034

## C. Expert Testimony

Federal Rule of Evidence 702 states as follows:

Testimony by Experts

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Allstate raises the following grounds for excluding the testimony of Steve Hitchcock, the Nunezes' expert witness:

- His education and training as an adjuster consist of a seven day training course through State Farm and a forty-hour online, self-study course to obtain an adjuster's license in Texas.

- He admits to a lack of training in the pricing software employed by Allstate (Integra) and therefore lacks a reliable basis for his assertion that Integra understates damage estimates.

- He did not utilize any recognizable methodology in formulating his opinion that Allstate failed to determine the correct cause of damage and mishandled the Nunezes' claims. Rather, his opinions relied on hearsay and Mr. Nunez's speculations as to the causes of damage.

Four other judges in the Eastern District of Louisiana have excluded Mr. Hitchcock's testimony under Rule 702, upon finding that: (1) he lacks the requisite qualifications to testify about claims handling; (2) he is unqualified to opine on Allstate's pricing, and he bases his opinions on Allstate's pricing on unreliable methodology; (3) he bases his claims handling and causation opinions on flawed methodology; (4) his opinions regarding the cause and extent of the

10

No. 09-30034

Nunezes' damages are unreliable and speculative; and (5) his replacement cost estimate does not assist the trier of fact.[8]

Under Rule 702, the district court did not abuse its discretion by excluding Mr. Hitchcock's testimony. Even without the benefit of an explanation as to its reasoning from the district court, rulings of other judges in the Eastern District of Louisiana and the facts propounded by Allstate demonstrate that a determination to exclude Mr. Hitchcock's testimony as an expert witness under Rule 702 does not amount to an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, the exclusion of the Nunezes' expert is AFFIRMED, and the grant of summary judgment is AFFIRMED.

---

[8] *See Phoenix v. Allstate Ins. Co.*, No. 07-8546 (E.D. La. Mar. 11, 2009) (Minute Entry) (Engelhardt, J.) (excluding Hitchcock's opinions on claims handling, the accuracy of Allstate's pricing software, and causation); *Bayle*, 2008 WL 5054572 (same); *Davis v. Am. Sec. Ins. Co.*, No. 07-4158, 2008 WL 5120688 (E.D. La. June 18, 2008) (Lemmon, J.) (precluding Hitchcock from testifying because he provided an insufficient expert report); *see also Lambert v. State Farm Fire & Cas. Co.*, 568 F. Supp. 2d 698, 712-13 (E.D. La. 2008) (Africk, J.) (holding that because Hitchcock "fail[ed] to provide sufficient information . . . that he is qualified to offer expert testimony concerning the cause of structure damage to Lambert's property[,] Hitchcock will not be permitted to testify at trial as to the cause of structure damage detailed in his report . . .").