# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 25, 2011

No. 09-30878

Lyle W. Cayce
Clerk

In re: In The Matter of the Complaint of TAIRA LYNN MARINE LIMITED NUMBER 5 L.L.C., as Owner of the Motor Vessel Barry, for Exoneration from or Limitation of Liability

------------------------------

TAIRA LYNN MARINE LIMITED NUMBER 5 L.L.C.,

Plaintiff

v.

WATER QUALITY INSURANCE SYNDICATE,

Defendant – Appellant/Cross-Appellee

v.

ZURICH INSURANCE CO; XL SPECIALTY INSURANCE CO; NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA,

Defendants – Appellees/Cross-Appellants

--------------------------------------------------------------------------------------------------------

KIRBY INLAND MARINE INC,

Plaintiff

v.

ZURICH INSURANCE CO; XL SPECIALTY INSURANCE CO; NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA,

Defendants – Appellees/Cross-Appellants

v.

No. 09-30878

WATER QUALITY INSURANCE SYNDICATE,

Defendant – Appellant/Cross-Appellee

-------------------------------------------------------------------------------------------------------

In re: In the Matter of the Complaint of KIRBY INLAND MARINE L.P., as Owner of the T/B Kirby 31801, for Exoneration From or Limitation of Liability

---------------------------------

KIRBY INLAND MARINE L.P.,

Plaintiff

v.

WATER QUALITY INSURANCE SYNDICATE,

Defendant – Appellant/Cross-Appellee

v.

ZURICH INSURANCE CO; XL SPECIALTY INSURANCE CO; NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA,

Defendants – Appellees/Cross-Appellants

-------------------------------------------------------------------------------------------------------

TAIRA LYNN MARINE INC,

Plaintiff

v.

WATER QUALITY INSURANCE SYNDICATE,

Defendant – Appellant/Cross-Appellee

v.

2

No. 09-30878

ZURICH INSURANCE CO; XL SPECIALTY INSURANCE CO; NATIONAL
UNION FIRE INSURANCE COMPANY OF LOUISIANA,

Defendants – Appellees/Cross-Appellants

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 6:01-CV-1420

Before BARKSDALE, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

In this insurance dispute, Water Quality Insurance Syndicate ("WQIS")
appeals the district court's grant of summary judgment in favor of National
Union Fire Insurance Company of Louisiana ("National Union").  We affirm.

## I.  BACKGROUND

On July 19, 2001, the M/V MR. BARRY and its tow, the T/B KIRBY 31801,
allided with the Louisa Bridge in St. Mary Parish, Louisiana.  Taira Lynn
Marine, Inc. ("Taira Lynn") owned and operated the tug, and Kirby Inland
Marine, L.P. ("Kirby Inland") owned the barge.  As a result of the allision, over
three million pounds of the barge's cargo, a gaseous mixture of propane and
propylene, was released into the environment.  St. Mary and Iberia Parishes
declared states of emergency, and the Louisiana State Police Hazardous
Materials Division ordered a mandatory evacuation of all businesses and
residents in the area for several days.  Hundreds of claims were filed against

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-30878

Taira Lynn and Kirby Inland for personal injury, property damage, economic loss,[1] and recovery of hazardous materials response costs. Those claims were brought under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701–2761; the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9675; state law; and general maritime law.

At the time of the allision, Taira Lynn held three relevant insurance policies. The first was a primary protection and indemnity policy jointly issued by Zurich American Insurance Company and XL Specialty Insurance Company (the "Primary Policy"). The Primary Policy had a $1 million coverage limit, inclusive of defense costs. The second, issued by WQIS, was a marine indemnity and reimbursement policy covering certain pollution liabilities (the "Pollution Policy"). The third was a bumbershoot liability policy, also known as a first-layer excess policy, issued by National Union (the "Excess Policy").

The Pollution Policy contained the following "Insuring Provisions":

### ARTICLE A

This Article provides coverage for specified liabilities arising from the discharge or substantial threat of a discharge of oil, as follows:

. . . .

### ARTICLE B

This Article provides coverage for specified liabilities arising from the release or threatened release of a hazardous substance, as follows:

---

[1] In an earlier appeal, we invalidated fourteen of the economic-loss claims because the claimants had not suffered physical damage to a proprietary interest. *See In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371 (5th Cir. 2006).

No. 09-30878

(1) Liability imposed under Section 107(a)(1) of [CERCLA] . . . ;

(2) Liability to any State or any political subdivision thereof imposed under the laws of such State or political subdivision, but only if and to the extent that such liabilities would have been imposed on the Assured under Section 107(a)(1) of CERCLA . . . ;

(3) Liability to a third party arising from the sudden, accidental and unintentional discharge, spillage, leakage, emission or release of a hazardous substance into or upon the navigable waters of the United States or adjoining shorelines for damages, as follows:

  (a) injury to, or economic losses resulting from, the destruction of or damage to real property, personal property or natural resources;

  (b) loss of subsistence use of natural resources that have been injured, destroyed, or lost; or

  (c) liability to a third party for loss, damage, cost, liability or expense which would have been recoverable by such a third party under ARTICLE B . . . had the third party been an Assured under this policy; and

(4) Costs and expenses incurred by the Assured for actions taken with the prior approval of WQIS to avoid or mitigate the liabilities insured against under this ARTICLE B . . . .

ARTICLE C

This Article provides coverage for specified defense costs, as follows:

Costs and expenses incurred by the Assured with the prior consent of WQIS for investigation of, or defense against, any liabilities covered under ARTICLES A and B . . . of the Policy.

According to the Pollution Policy's Vessel Schedule, the tug was covered up to $5 million under Article A and $10 million under Article B. The amount of coverage under Article C was not limited.

5

No. 09-30878

After coverage under the Primary Policy had been exhausted, WQIS declined to cover certain defense and settlement costs under the Pollution Policy, and National Union paid those costs instead. In particular, National Union paid: (1) $75,000 to Jay's Seafood, Inc. ("Jay's Seafood") to settle its claim against Taira Lynn for property damage, economic losses, and response and removal costs; (2) $32,500 to Twin Brothers Marine, L.L.C. ("Twin Brothers") to settle its claim against Taira Lynn for economic losses; (3) $1,259,356.03 to Taira Lynn's defense counsel, Liskow & Lewis; (4) $269,431 to Preis & Roy and $83,310.74 to Nicoletti Hornig & Sweeney, both for claims-settlement services for Taira Lynn; and (5) $102,702.12 to Kirby Inland's defense counsel, Frilot Partridge.

National Union brought suit against WQIS, seeking reimbursement for the above payments. National Union and WQIS then filed cross-motions for summary judgment, and the district court granted summary judgment in favor of National Union for Taira Lynn's defense costs. In its order, the court found that the propane/propylene that had been released into the environment as a result of the allision was a hazardous substance under CERCLA, thereby triggering coverage under the Pollution Policy for the liabilities specified in Articles B and C.[2] National Union then filed a motion to alter the judgment, requesting reimbursement for the Jay's Seafood settlement payment, the Twin Brothers settlement payment, and Kirby Inland's defense costs, and seeking prejudgment interest on the entire award. The court granted that motion without comment.

---

[2] The district court also found that the propane/propylene was not an "oil" under the OPA and, therefore, that Article A of the Pollution Policy did not provide coverage.

No. 09-30878

WQIS appeals.  It contends that it is not obligated under the Pollution Policy to reimburse National Union for the payments National Union made on Taira Lynn's behalf.  It concedes on appeal that the propane/propylene was a "hazardous substance."[3]

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo.*" *Offshore Drilling Co. v. Gulf Copper & Mfg. Corp.*, 604 F.3d 221, 225 (5th Cir. 2010) (citation omitted).  We apply "the same standards as the district court" and "may affirm on any grounds supported by the record." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010) (footnotes omitted).  Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.  56(a).

## III. ANALYSIS

"The interpretation of a marine policy of insurance is governed by relevant state law, which in this case is Louisiana law." *Cal-Dive Int'l, Inc. v. Seabright Ins. Co.*, 627 F.3d 110, 113 (5th Cir. 2010).  "Under Louisiana law, an insurance policy is a contract between the parties and should be interpreted according to the general rules of interpretation of contracts prescribed in the Louisiana Civil Code." *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844–45 (5th Cir. 2010) (citation omitted).  "An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy." *Id.* at 845 (citation omitted).  "'The words of a contract must be given their generally

---

[3] National Union filed a cross-appeal.  It conceded at oral argument, however, that it is not seeking to alter the judgment.

prevailing meaning.'" *Id.* (quoting LA. CIV. CODE ANN. art. 2047). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* (citing LA. CIV. CODE ANN. art. 2046).

## A.   The Two Settlement Payments

Although the district court did not state the reasons for its decision, it implicitly found that the two settlement payments to Jay's Seafood and Twin Brothers are covered by Article B of the Pollution Policy. WQIS makes only one argument on appeal: it contends that the Pollution Policy does not cover the settlement payments because neither settled claim was cognizable under CERCLA. This argument has no basis in the language of the Pollution Policy. Unlike §§ 1 and 2 of Article B, § 3(a) and (b) of Article B do not condition coverage on the existence of liability under CERCLA. Rather, § 3(a) and (b) cover certain specified "[l]iabilit[ies] to a third party arising from the sudden, accidental and unintentional discharge . . . of a hazardous substance" without regard to whether the liability arises under CERCLA. In addition, because § 3(a) and (b) are not limited to CERCLA claims, neither are §§ 3(c) and 4, because both piggyback on the other sections of Article B, including § 3(a) and (b). Thus, it does not matter whether the Jay's Seafood and Twin Brothers claims were valid under CERCLA, and we affirm the district court's grant of summary judgment in favor of National Union with respect to the settlement payments.

## B.   Taira Lynn's Defense Costs

The district court found that Taira Lynn's defense costs are covered by Article C, which requires WQIS to reimburse "[c]osts and expenses incurred by

No. 09-30878

[Taira Lynn] with the prior consent of WQIS for investigation of, or defense against, any liabilities covered under ARTICLES A and B . . . of the Policy." On appeal, WQIS makes four arguments against coverage, none of which are availing.[4]

First, WQIS argues that National Union has failed to show that the costs at issue arose from the defense of claims that were cognizable under CERCLA. This argument is merely another version of WQIS's flawed argument with respect to the settlement payments. The plain language of Article C extends coverage to defense costs relating to "any liabilities covered under [Article B]," which includes liabilities covered under § 3(a) and (b) of Article B. Because § 3(a) and (b) do not demand the existence of a valid claim under CERCLA, Article C does not either.

Second, WQIS contends that Taira Lynn's defense costs are not covered because they were incurred, at least in part, to defend against personal-injury claims. Such claims are expressly excluded from coverage by Part III of the Pollution Policy, which states that "this Policy does not provide coverage for any liability, loss, damage, cost or expense arising from . . . [l]oss of life, bodily injury, mental anguish or any other emotional, physical or mental illness." But WQIS, which bears the burden of proving the applicability of the policy exclusion, has failed to identify the specific claims that should be excluded on this basis. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 880 (5th Cir. 2009) (citing *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000))

---

[4] In the proceedings below, WQIS also argued that Article C does not provide coverage because (1) Taira Lynn had not obtained WQIS's prior approval, and (2) Taira Lynn had not "incurred" the expenses because National Union had paid them directly. WQIS does not make either argument on appeal.

No. 09-30878

(stating that under Louisiana law, "[the insurer] bears the burden of proving the applicability of an exclusionary clause within [an insurance policy]"); *Tunstall v. Stierwald*, 809 So. 2d 916, 921 (La. 2002) ("The insurer . . . bears the burden of showing policy limits or exclusions."). Therefore, WQIS's exclusion argument fails.

Third, WQIS contends that National Union, in its proof to the district court, submitted only summaries of Taira Lynn's defense costs and therefore failed to prove that it is entitled to reimbursement. Federal Rule of Evidence 1006 provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

In this case, the record shows that National Union submitted summaries of the voluminous billing records of the three law firms involved in Taira Lynn's defense and, in its motion for summary judgment, advised the district court that "the supporting documentation for the summaries included as Exhibits '11,' '28,' '29,' '30,' '32,' and '33' were too voluminous to reproduce herewith, but will be made available to the Court and the parties upon request." WQIS did not object to the summaries in the district court. It also did not request or attempt to review the voluminous supporting invoices. By failing to timely object to the summaries or to seek to inspect the underlying records, WQIS has waived its objection. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 n.2 (5th Cir. 2010) (citations omitted) ("[T]he plaintiffs did not advance this [evidentiary] argument before the district court, and thus it is

10

No. 09-30878

waived."); *Sumitomo Bank of Cal. v. Prod. Promotions, Inc.*, 717 F.2d 215, 218–19 (5th Cir. 1983) (upholding the admission of summaries where the opposing party failed to object on the basis of Rule 1006 and did not request to review the underlying documents).

Finally, WQIS argues that National Union had an obligation under the Excess Policy to pay Taira Lynn's defense costs and is therefore not entitled to reimbursement from any other insurer. We disagree. The Excess Policy straightforwardly states:

> If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance . . . .

Article C of the Pollution Policy covers all of Taira Lynn's defense costs, and therefore, according to the above language, coverage under the Excess Policy was not triggered. Furthermore, we note that the "Schedule of Underlying [Insurance]" in the Excess Policy lists a policy for "Vessel Pollution Liability: OPA and CERCLA" with a liability limit of $5 million under "Article A" and $10 million under "Article B."[5] This is a reference to the Pollution Policy, meaning that the Excess Policy specifically contemplated that its coverage would be secondary to coverage under the Pollution Policy. There is no language in the Pollution Policy that contradicts this finding, and thus we reject WQIS's last argument and affirm the district court's grant of summary judgment in favor of National Union with respect to Taira Lynn's defense costs.

---

[5] The original version of the Excess Policy only listed a liability limit of $5 million per occurrence, but the policy's first endorsement, which was effective at the time of the allision, brought the coverage limits into accord with the Pollution Policy.

11

No. 09-30878

## C.   Kirby Inland's Defense Costs

The district court, without explanation, found that the costs of Kirby Inland's defense are covered by the Pollution Policy. WQIS asserts that the policy does not cover those costs because Kirby Inland is not identified as an "Assured" in the policy and the T/B KIRBY 31801 is not listed on the policy's vessel schedule as one of the insured vessels. National Union counters that Kirby Inland qualifies as an "additional Assured" under "Endorsement No. 1" of the Pollution Policy. The endorsement states, in pertinent part:

(a) Where a Vessel insured hereunder is working or performing services pursuant to a contract between the owner or operator of the Vessel (the Assured) and an entity or person not insured hereunder, if the Assured agrees and it is required by the contract, the entity or person with whom the Assured is in contractual privity is hereby named as an additional Assured hereunder, but only to the extent required by the contract.

The record contains a copy of the charter agreement between Taira Lynn and Kirby Inland. This agreement required Taira Lynn to obtain certain types of insurance to protect Kirby Inland from liability, and it specifically required Taira Lynn to obtain a "Pollution Liability" insurance policy from WQIS "or its equivalent" with at least $5 million of coverage. After listing the coverage requirements, the charter agreement states as follows:

Owner [Taira Lynn] shall cause Charter [Kirby Inland], its parent, subsidiaries and affiliates, and Clients for whom Charterer may be working *to be named as additional assureds . . .* with full waiver of subrogation in favor of Charterer and Clients for whom Charter may be working in each of the aforesaid policies. . . . It is specifically understood and agreed that Owner shall name Charterer, its parent, subsidiaries and affiliates and Clients for whom Charterer may be working *as additional assureds on all insurance required*

12

No. 09-30878

*hereunder* for the purpose of complying with Owner's indemnity
obligations hereunder.

(emphasis added).   This contract satisfies the requirements of Endorsement
No. 1, and we therefore find that Kirby Inland was an "additional Assured"
under the Pollution Policy.   Thus, Kirby Inland's defense costs are covered to
the same extent as Taira Lynn's defense costs under Article C, and we affirm
the district court's grant of summary judgment in favor of National Union with
respect to Kirby Inland's defense costs.

## D.   Prejudgment Interest

The district court also awarded prejudgment interest on the costs and
expenses owed by WQIS.   WQIS appealed the resolution of the motion, but did
not submit any argument to us regarding the interest award.   Thus, WQIS has
waived its challenge to this portion of the award by failing to brief it.   *Cuadra
v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 n.5 (5th Cir. 2010) (citation
omitted); *see also* FED. R. APP. P. 28(a)(9)(A) (requiring a party to present its
argument "with citations to the authorities and parts of the record on which
the appellant relies").

## IV.  CONCLUSION

We affirm the district court's grant of summary judgment regarding
Taira Lynn's defense costs, Kirby Inland's defense costs, the Jay's Seafood and
Twin Brothers settlement payments, and prejudgment interest.[6]

AFFIRMED.

---

[6] Because we find that National Union is entitled to reimbursement for all of the
payments it made on Taira Lynn's behalf, we need not address National Union's alternate
argument that the propane/propylene mixture was an "oil" under the OPA and, as a result,
that Article A of the Pollution Policy provides coverage.

13