# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30027
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 22, 2017

Lyle W. Cayce
Clerk

JAMES J. MCDANIEL,

    Plaintiff–Appellant,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, doing business as
Amtrak,

    Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-5845

Before REAVLEY, OWEN, and ELROD, Circuit Judges.

PER CURIAM:*

James McDaniel applied for several management positions with the National Railroad Passenger Corporation (Amtrak) following the company's elimination of his managerial position. After Amtrak did not select him for any of the positions, McDaniel filed this suit, claiming that Amtrak unlawfully discriminated against him based on his race, gender, and age and retaliated

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

against him based on his protected activities in pursuing these claims. The district court granted summary judgment in favor of Amtrak on all claims. We affirm.

**I**

McDaniel's discrimination and retaliation claims stem from what Amtrak describes as a reorganization and reduction-in-force. At the time, McDaniel had worked at Amtrak for twenty-five years and was an Assistant Superintendent of Passenger Services, a position which Amtrak's reorganization eliminated. Employees whose positions the reorganization eliminated could apply for other management positions. McDaniel alleges that his position's responsibilities were transferred to a new Route Director position.

McDaniel applied for the Route Director position. He believed he was qualified for the position, alleging that the job "would be substantially the same" as his old position because he would continue to live in New Orleans and supervise many of the same employees. Amtrak acknowledges that the new position entailed some of the same responsibilities as McDaniel's old position but contends it included more responsibility and accountability. Thomas Kirk, a Deputy General Manager who had supervised McDaniel for several years, was part of the panel that interviewed McDaniel for the position and was responsible for selecting a candidate. Kirk selected Anella Popo as his first choice for the position and, after consulting the interview panel, offered Popo the position. McDaniel, a white male, was fifty-eight years old. Popo, an African-American woman, was forty-one years old.

After not being selected for the Route Director position, McDaniel applied for six other managerial positions, but Amtrak selected other applicants for each position. Amtrak terminated McDaniel after he refused its offer of a severance package in exchange for the release of potential claims. He

then exercised union seniority to take a non-management position, which had reduced salary and benefits.

He filed an internal complaint of discrimination, alleging that Amtrak discriminated against him on the basis of his age, race, and gender in the selection process for Route Director and some or all of the other positions for which he was not selected. After Amtrak did not respond to this internal complaint for six months, McDaniel filed a charge of discrimination with the EEOC. Two months later, Amtrak's internal employment compliance officer concluded that no discrimination had occurred.

McDaniel later applied for Crew Base Manager and Onboard Services Manager, both of which are management positions. Popo, as Route Director, was the decision maker for both. Popo selected other applicants for both positions: Lori Ball-Austin for the Crew Base Manager position and Horatio Ames for the Onboard Services Manager position. Ball-Austin is an African-American female and was fifty years old; Ames is an African-American male and was fifty-five years old.

McDaniel received right to sue letters from the EEOC and filed this lawsuit, claiming Amtrak violated Title VII,[1] the Age Discrimination in Employment Act (ADEA),[2] and Louisiana state law[3] by discriminating and retaliating against him when not selecting him for any management position. He subsequently pursued only the claims for discrimination based on his age, race, and gender in the selection process for the Route Director, Crew Base Manager, and Onboard Services Manager positions, and for retaliation in the selection process for the latter two positions. He also made a disparate impact age discrimination claim based on Amtrak's reduction-in-force. Amtrak moved

---

[1] 42 U.S.C. §§ 2000e et seq.

[2] 29 U.S.C. §§ 623 et seq.

[3] LA. STAT. ANN. §§ 23:312, 23:332, 23:967.

No. 17-30027

for summary judgment on all of McDaniel's claims.  The district court granted the motion for summary judgment in full.  McDaniel appealed.

## II

"We review the grant of a motion for summary judgment de novo, applying the same standard as the district court."[4]  "Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."[5]  "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party."[6]

## III

On appeal, McDaniel claims Amtrak discriminated and retaliated against him in violation of Title VII, the ADEA, and Louisiana law.  Both parties agree that the federal and state law claims are governed by the same analysis; we will not separately analyze McDaniel's state law claims.  McDaniel does not appeal the district court's dismissal of his disparate impact claim.

"The plaintiff must carry the initial burden of establishing a *prima facie* case of discrimination"[7] and retaliation.[8]  A plaintiff may prove both ADEA and Title VII claims by direct or circumstantial evidence.[9]  If the plaintiff relies on circumstantial evidence, we apply to both Title VII and ADEA claims the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[10]

---

[4] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[5] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012).

[6] *Moss*, 610 F.3d at 922.

[7] *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999).

[8] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

[9] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam); *see Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).

[10] *McCoy*, 492 F.3d at 556; *Patrick*, 394 F.3d at 315.

No. 17-30027

Under this framework, once a plaintiff makes a prima facie case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision."[11] "If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual."[12]

A plaintiff can show pretext through "evidence of disparate treatment,"[13] "by showing that the employer's proffered explanation is false or 'unworthy of credence,'"[14] or by showing that he was "'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."[15] "The plaintiff must rebut each nondiscriminatory reason articulated by the employer."[16] "The 'rare' instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred."[17]

To establish a prima facie Title VII discrimination case, the plaintiff must show he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by

---

[11] *Moss*, 610 F.3d at 922 (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

[12] *Id.*

[13] *Id.* (quoting *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)).

[14] *Id.* (quoting *Jackson*, 602 F.3d at 379).

[15] *Id.* (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)).

[16] *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[17] *Id.*

someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.[18]

"To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.'"[19] A plaintiff makes a prima facie ADEA discrimination claim for failure to hire by showing "(1) he belongs to a protected class; (2) he applied for and was qualified for a position that was seeking applicants; (3) he was rejected; and (4) following his rejection, another applicant not of the protected class was hired."[20]

To establish a prima facie retaliation case under Title VII or the ADEA, a plaintiff must show that "(1) that she engaged in activity protected by Title VII or the ADEA; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision."[21] For an ADEA retaliation claim, a plaintiff must also show "he was qualified for his position."[22]

## IV

## A

We first consider McDaniel's claim that Amtrak discriminated against him by not hiring him for the Route Director position. Amtrak does not dispute that McDaniel established a prima facie case for age, race, and gender discrimination regarding the Route Director position. Instead, Amtrak asserts six reasons for hiring Popo over McDaniel: Popo's work ethic, her strong

---

[18] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

[19] *Moss*, 610 F.3d at 922 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).

[20] *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999).

[21] *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992).

[22] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015).

leadership skills, her strong interview performance, her management experience, McDaniel's poor interview performance, and his "lacking" leadership style.  These are legitimate, non-discriminatory reasons to prefer one candidate over another, as we have previously confirmed in an unpublished decision.[23]  These justifications satisfy Amtrak's burden at the second step, because they, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action."[24]

In response, McDaniel argues Amtrak's justifications are merely pretext, on six bases.  He first argues that he was more qualified than Popo.  "A showing that the unsuccessful employee was "'clearly better qualified" (as opposed to merely better or as qualified) than the employees who are selected' will be sufficient to prove that the employer's proffered reasons are pretextual."[25]  However, "[t]he bar is set high for this kind of evidence."[26]  McDaniel must "present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"[27]  "[U]nless the qualifications are so widely disparate that no reasonable employer would have made the same decision,"[28] "differences in qualifications are generally not probative evidence

---

[23] *See Gregory v. Town of Verona*, 574 F. App'x 525, 528 (5th Cir. 2014) (unpublished) (per curiam) (noting that not interviewing well and not displaying leadership abilities are "legitimate, non-discriminatory reasons to prefer one candidate over another").

[24] *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (emphasis omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

[25] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)).

[26] *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

[27] *Moss*, 610 F.3d at 923 (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

[28] *Id.* (alteration in original) (quoting *Deines*, 164 F.3d at 282).

of discrimination."[29]  "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'"[30]

To demonstrate his qualifications, McDaniel relies on positive performance reviews, two positive references, and his twenty-five years of experience at Amtrak, including in a position he claims was "essentially identical" to the Route Director position.  He also claims that Popo had seven fewer years of managerial experience and less complex job duties, and he supplied a statement by an Amtrak employee who worked for both McDaniel and Popo that Popo was less skilled than McDaniel.

Amtrak acknowledges that McDaniel had "lengthy experience with Amtrak."  However, "[t]his court has repeatedly stated that 'an "attempt to equate years served with qualifications . . . is unpersuasive.'"'"[31]  An employee's "better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified."[32]  Even if McDaniel had more years at Amtrak and had served in a managerial role for longer, Popo's qualifications were not clearly inferior.  She had a Bachelor's degree and Master's degree in Business Administration, and Kirk believed that her completion of those degrees while working full time "demonstrated a strong work ethic and the ability to successfully manage multiple responsibilities at once."  Though Popo's managerial experience was not as lengthy as McDaniel's, Kirk believed it was sufficient and similar to that of McDaniel, as Popo had done well managing a "particularly busy" station in Washington, D.C.

---

[29] *Id.* (quoting *Celestine*, 266 F.3d at 357).

[30] *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (alteration in original) (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)).

[31] *Nichols v. Lewis Grocer*, 138 F.3d 563, 569 (5th Cir. 1998) (second alteration in original) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996)).

[32] *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002).

No. 17-30027

McDaniel emphasizes that a comparison of his performance evaluation to Popo's is valuable evidence of pretext. The district court did not consider the content of the evaluations, determining that McDaniel did nothing to controvert Kirk's statement that he did not consider the evaluations in the selection process. McDaniel contends that Kirk's statement "defies credulity" and, in any case, that Kirk had actual knowledge of the evaluations. However, even if we were to consider the performance evaluations, they do not further McDaniel's pretext argument as evidence that he was clearly more qualified. Both McDaniel and Popo received the same overall rating and positive summaries. Popo's stated that, although she was a new manager (as McDaniel stresses), she had "shown great strengths in managing her overall operations" and would "only get stronger" "[a]s she bec[ame] thoroughly acclimated to her responsibilities."

McDaniel attempts to create a factual dispute by questioning whether Popo was truthful in stating she earned her Master's degree. He alleges that Popo's work and university were located in different states. However, "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."[33] McDaniel provides no reason to believe that Kirk would have questioned whether Popo had in fact obtained a Master's in Business Administration.

McDaniel's other evidence of pretext is equally unavailing. McDaniel contends that Amtrak's use of a "Candidate Selection Justification" form that includes the candidate's race, gender, and birthdate is evidence of pretext. But McDaniel does not explain how inclusion of these facts signals that discrimination occurred. Nor does McDaniel dispute Amtrak's assertion that it is legally obligated to track the race and gender of candidates interviewed.

---

[33] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

McDaniel offers four other pieces of evidence that go only to age discrimination.  First, he states that Amtrak "suddenly" advertised multiple management positions as preferring candidates with a Master's degree, which McDaniel contends was an attempt to hire younger workers because Master's degrees are "disproportionately held by younger applicants."  McDaniel cites no record evidence to support this assertion.  Nor does he account for any legitimate reason Amtrak would have for such a preference.  Second, McDaniel cites two articles, which appeared in an Amtrak monthly publication, that discuss the contributions of Amtrak employees under the age of forty.  One focuses on an Amtrak employee who was named a rising star by an outside magazine, and the other highlights "Younger Influencers" as an "Integral Part of the Amtrak Multigenerational Team," noting that twenty-nine percent of Amtrak employees are under the age of forty.  McDaniel can point to no portion of these articles suggesting that Amtrak would prefer to hire younger workers.  These two articles, "praising young workers" as McDaniel puts it, do not create a "genuine issue of material fact as to pretext."[34]  Third, he suggests that Amtrak implemented a new benefit plan "to disfavor older employees."  Not only does he not offer record support as to how this plan disfavors older employees, he does not offer evidence that such a plan would indicate Amtrak's preference for hiring younger employees.

Finally, McDaniel claims Amtrak's reduction-in-force disproportionally affected older workers, citing a statistic that the average age of the nineteen employees offered a severance package through the reduction-in-force was higher than the age of employees not offered the severance package. McDaniel did not cite this statistic as evidence of pretext to the district court, and the

---

[34] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

district court did not consider it as pretext evidence. "An argument not raised before the district court cannot be asserted for the first time on appeal."[35]

Even considering all of McDaniel's discrimination evidence together, it does not create a fact issue as to whether there is "evidence of disparate treatment"[36] or as to whether Amtrak's six "proffered explanation[s] [are] false or 'unworthy of credence.'"[37] We therefore hold that McDaniel does not meet his burden of creating a material fact issue as to whether Amtrak's reasons are "merely pretextual."[38]

## B

McDaniel next claims Amtrak's decision to hire Ball-Austin for the Crew Base Manager position instead of him was the result of age, race, or gender discrimination. Again, Amtrak does not dispute that McDaniel established a prima facie case of discrimination, and McDaniel does not dispute that Amtrak offers legitimate justifications for hiring Ball-Austin. Popo selected Ball-Austin for the position because she believed Ball-Austin was "very organized with the reports," "could develop stuff at the last minute," "was easy to work with," and could manage "multiple tasks at one time." Additionally, Popo believed that McDaniel "wasn't organized."

To show that Popo's explanation is merely pretext, McDaniel reasserts the same evidence he relied on for the Route Director position. We reject the bulk of that evidence for the same reasons as stated above. We will analyze McDaniel's claim that he was "clearly better qualified" than Ball-Austin, as the facts differ from the comparison to Popo.

---

[35] *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 846 (5th Cir. 2010) (quoting *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008)).

[36] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Jackson*, 602 F.3d at 378).

[37] *Id.* (quoting *Jackson*, 602 F.3d at 379).

[38] *Id.*

No. 17-30027

The Crew Base Manager position required, inter alia, three to five years of employment experience and a Bachelor's degree. Ball-Austin had worked for Amtrak for twenty-eight years, and McDaniel had worked there for twenty-five. McDaniel claims he had more management experience, as he had previously supervised the position of Crew Base Manager and had been a Crew Base Manager. Ball-Austin had been an Onboard Services Manager for eight years. McDaniel adds that he had formerly supervised Ball-Austin and claims she barely met her performance goals.

A reasonable juror could not conclude that McDaniel was clearly more qualified than Ball-Austin. Aside from his claim that she barely met her performance goals, McDaniel's argument rests the fact that he had more years of managerial experience. As noted above, having more experience does not necessarily indicate that one is "clearly better qualified."[39] Moreover, not only did Ball-Austin have managerial experience, but Popo testified that other aspects of Ball-Austin's performance qualified her for the position, notably, Ball-Austin's organizational skills. We therefore hold that McDaniel cannot create a genuine fact issue as to whether he is clearly more qualified than Ball-Austin, and that his other evidence of pretext falls short for the same reasons as noted above.

**C**

McDaniel also claims Amtrak discriminated against him by hiring Horatio Ames for the Onboard Services Manager position. McDaniel does not make a claim of sex discrimination, as both he and Ames are the same gender. Amtrak contends that Ames and McDaniel were within the same protected age class, as Ames was only two years younger than McDaniel. We need not address this contention because McDaniel's Onboard Services Manager

---

[39] *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002).

position discrimination claim fails for the same reason as his previous discrimination claims. Even if McDaniel were to make out a prima facie age-based discrimination claim along with his race-based claim, he does not create a genuine issue of material fact as to whether Amtrak's legitimate reasons for hiring Ames were merely pretextual.

As with the Crew Base Manager position, Popo was the final decision maker for the Onboard Services Manager position. She testified that she selected Ames because of his experience in customer service, management, and train and engine equipment as well has his personal attributes and experiences such as leadership qualities, military service, enthusiasm, motivation, and interview performance.

Again, McDaniel argues he was clearly better qualified than Ames. McDaniel points out that Ames had only three years of experience at Amtrak and had not worked in onboard service management. However, Ames had considerable management experience with other companies and supervisor experience in the Air Force. Though he had not specifically worked in onboard service management, Popo testified that the "policies or processes" were something he could learn and that Ames had the leadership qualities she wanted. McDaniel does not "present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"[40]

McDaniel also argues that a fact issue exists as to why he was not initially offered an interview. He claims Popo intentionally left him off the interview list, only to include him after he called to secure his spot. Popo testified that McDaniel had been on the list but failed to receive an invitation

---

[40] *Moss*, 610 F.3d at 923 (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

due to an administrative error.  McDaniel has failed to point to any record evidence that would create a material factual dispute.[41]  Even if Popo intentionally left McDaniel off the interview list, McDaniel provides no reason to believe that it was for discriminatory purposes.[42]

McDaniel also reasserts the same circumstantial evidence of pretext as he did for the Route Director position.  As discussed above, this evidence does not create a genuine issue of material fact as to whether Amtrak's legitimate reasons were merely pretext.

## D

Finally, McDaniel argues that Amtrak did not hire him for the Crew Base Manager position or the Onboard Services Manager position in retaliation for filing an EEOC claim.  Prior to applying for these positions, McDaniel filed an internal complaint and a formal charge of discrimination with the EEOC alleging discrimination in his non-selection for the Route Director position.

Amtrak contends that McDaniel fails to make out a prima facie case of retaliation for both positions because Popo was unaware that McDaniel filed the discrimination complaints.  McDaniel alleges that he informed Popo of his EEOC complaint.  Even if McDaniel has established a factual dispute as to the prima facie retaliation case, he again is unable to proffer evidence that Amtrak's legitimate justifications are merely pretext.  For his retaliation claims, McDaniel offers no new evidence that Amtrak's reasons were pretext in addition to those we have already determined were insufficient to raise a

---

[41] *See Jackson*, 602 F.3d at 378 ("The question is whether Jackson has shown that there is a genuine issue of *material* fact as to whether this reason was pretextual." (emphasis added)).

[42] *See Moss*, 610 F.3d at 928.

fact issue for his discrimination claims.    For the reasons listed above, McDaniel's retaliation claims do not survive summary judgment.

*     *     *

For the foregoing reasons, we AFFIRM the judgment of the district court.