# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60662

ANNETTE BENJAMIN,

      Plaintiff-Appellant,

v.

FELDER SERVICES, L.L.C., doing business as Oxford Health and Rehab Center,

      Defendant-Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**
November 20, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:16-CV-99

Before DAVIS, COSTA, and OLDHAM, Circuit Judges.

PER CURIAM:*

      Plaintiff-Appellant Annette Benjamin, the former Dietary Manager at a nursing home, says she was fired because of her age in violation of the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. § 623(a)(1). Defendant-Appellee Felder Services, L.L.C. ("Felder"), her former employer, counters it fired her due to deficient job performance, not age. Finding no

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60662

evidence Felder's legitimate rationale for firing Ms. Benjamin was pretext for discrimination, the district court granted summary judgment for Felder.  Ms. Benjamin appealed.  We affirm.

I.

Ms. Benjamin worked in the dietary department at Graceland Care Center of Oxford ("Graceland"), a nursing home, for approximately 32 years. As Dietary Manager, she was responsible for taking care of residents' dietary needs, a job that included managing kitchen staff and maintaining the operation and cleanliness of the kitchen.

On June 8, 2015, when Ms. Benjamin was 59 years old, Felder took over the contract to provide dietary services at Graceland.  Brenda Anderson, Felder's Director of Dining Services, hired Ms. Benjamin to continue in her position as Dietary Manager.  But conflicts quickly arose.

Graceland had been surveyed by the Center for Medicare and Medicaid Services ("CMS") in early June 2015—prior to Felder taking over the dietary services department.  Nursing homes must submit to such surveys as a requirement for participation in Medicare and Medicaid, and failure to meet regulatory requirements can lead to adverse consequences such as civil penalties or termination of participation in Medicare or Medicaid.  *See* 42 U.S.C. § 1396r.  During a survey, CMS representatives inspect all regulated aspects of the nursing home, including its kitchen and dining services, in a process that takes several days.  At Graceland's June 2015 survey, CMS identified several deficiencies relating to kitchen cleanliness, expired food, and food service at Graceland.  Graceland was informed of the deficiencies during its exit interview with regulators.

One such deficiency involved tray cards, which are records for each nursing home resident reflecting dietary restrictions ordered by the resident's doctor as well as the resident's food preferences.  Ms. Benjamin, the Dietary

Manager, was responsible for maintaining accurate tray cards. Consequently, shortly after Felder took over, the nursing home administrator instructed Ms. Benjamin to conduct a "tray card audit." This entails checking each resident's tray card against the resident's doctor's orders or the resident's chart to ensure the tray card is accurate.

Elizabeth House, the Felder District Manager responsible for overseeing Ms. Benjamin and the dietary department at Graceland, explained Ms. Benjamin failed to timely complete the tray card audit: "She basically refused to do anything with the tray card audits, so I had to do the tray card audits and then would leave her a list of things to check and then when I came back in, they weren't checked—and this was on several occasions."

CMS also identified deficiencies related to the timeliness and temperature of the food service. Ms. Benjamin was asked to create a resident seating chart, which is used to ensure residents seated together can be timely served together. But she failed to complete this task in a timely manner.

Felder personnel also had concerns with Ms. Benjamin's treatment of the kitchen staff and nurses. As Ms. House explained:

> [T]he way she talked to the dietary staff in my opinion was rude and inappropriate. On several occasions she came into the kitchen and raised her voice to the employees. At one time in particular that sticks out in my mind, the lunch was late and . . . she just started yelling [at the staff], why—why are y'all late? Y'all have to be on time . . . . [I]t was upsetting the dietary staff.

Ms. House emphasized, "as the dietary manager, it's [Ms. Benjamin's] responsibility for the meal to go out on time." Ms. House testified she was also concerned by Ms. Benjamin's unwillingness to "cooperate with nursing staff" and her negativity towards any suggestions given by Ms. House or the nursing staff. Ms. Benjamin reacted "very negative[ly]" to any "suggestions that [were] given] to her."

Felder fired Ms. Benjamin on July 8, 2015. Felder hired Ricky Diggs, age 42, to replace her.

## II.

"We review the grant of a motion for summary judgment de novo, applying the same standard as the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Summary judgment should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All facts are viewed in the light most favorable to the non-moving party, who must offer more than conclusory allegations to defeat summary judgment. *See Moss*, 610 F.3d at 922.

The ADEA makes it unlawful to fire an employee who is "at least 40 years of age" because of her age. 29 U.S.C. §§ 623(a)(1), 631. The "plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Moss*, 610 F.3d at 922 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).

Where, as here, the plaintiff's case is premised on circumstantial evidence, we apply the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Moss*, 610 F.3d at 922. Under the *McDonnel Douglas* framework, a plaintiff alleging unlawful termination must put forward a *prima facie* case that: (1) she was fired; (2) she was qualified for the position; (3) she was within the protected class; and (4) she was either (a) "replaced by someone outside the protected class," (b) "replaced by someone younger," or (c) "otherwise discharged because of [her] age." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). If the ADEA plaintiff makes a *prima facie* case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Id.* "If

the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922.

## III.

In this case, it is undisputed Ms. Benjamin made out a *prima facie* case under the ADEA: she was fired; she was qualified for the position; she was over 40 years old; and she was replaced by a younger employee. *See Berquist*, 500 F.3d at 349. This case therefore turns on the second and third factors in the *McDonnell Douglas* burden-shifting framework: (A) whether "the employer [can] articulate some legitimate, nondiscriminatory reason for" its decision, and (B) whether that articulated reason "was in fact pretext." *McDonnell Douglas*, 411 U.S. at 802, 804.

## A.

As discussed above, Felder presented evidence it fired Ms. Benjamin because she failed to timely complete assignments—specifically, the tray card audit and the resident seating chart—and because her overall work performance was poor. We have repeatedly recognized that poor job performance is a legitimate, nondiscriminatory reason for firing an employee. *See, e.g., Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005); *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001). Indeed, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *see also Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 184 (5th Cir. 2016) (per curiam).

Felder therefore carried its burden of production.

B.

Once the employer satisfies its burden of production, the plaintiff must show the proffered nondiscriminatory reason is merely pretext for age discrimination. *See Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013). "[A] plaintiff relying upon evidence of pretext to create a fact issue on discriminatory intent falters if [s]he fails to produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

A plaintiff may show "pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton*, 333 F.3d at 578 (internal quotation marks omitted). Ms. Benjamin does not point to any other employee who was treated differently, so she must establish pretext by showing Felder's explanation is "false or unworthy of credence." *Id.* She attempts to do so in five ways. Each is unavailing.

1.

The first nondiscriminatory reason proffered by Felder is Ms. Benjamin's failure to complete projects in a timely manner. Ms. Benjamin does not dispute her failure to timely complete her projects but argues this reason must be pretextual because she had good excuses. First, she says the tray card audit was delayed because she had many other responsibilities and because her computer was not compatible with Felder's system for tray cards. Second, she implies the tray card audit and seating chart update were unnecessary because she had updated both a week before Felder took over the facility. Finally, she suggests her failure to complete the tray card audit and seating chart should be excused because she customarily relied on subordinates to complete parts of these tasks.

No. 17-60662

Ms. Benjamin's explanations and criticisms come down to one underlying complaint: Felder's expectations for the Graceland Dietary Manager's job performance were unreasonably high.  That may have been so, but unreasonable expectations are not evidence of discriminatory intent.  "The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Moss*, 610 F.3d at 926 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988)).  Even if Ms. Benjamin believed the tray card audit and seating chart updates were unimportant, she does not dispute her failure to complete these assigned tasks.  She likewise does not dispute that these projects related to deficiencies identified by CMS, undermining her theory they were unimportant.[1]  Moreover, there is no evidence Ms. Benjamin had delegated these particular tasks to her subordinates—and even if she had, she agrees that as Dietary Manager she was ultimately responsible for everything in her department.  Pointing to Ms. Benjamin's failure to complete tasks is not pretext for age discrimination.  *See, e.g.*, *Morris v. Tri-State Truck Ctr., Inc.*, 681 F. App'x 303, 305 (5th Cir. 2017) (per curiam) (no evidence of age discrimination where employee "presented no evidence that she did not, in fact" take the actions cited by the employer as its basis for firing her).

2.

As to Felder's other stated reason for the termination—overall poor performance—Ms. Benjamin argues she had always received positive performance reviews from Graceland, so Felder's concerns about performance

---

[1] Ms. Benjamin argues the CMS survey could not have been part of Felder's legitimate rationale because the report was received over a month after she was fired.  Though CMS's final report was not issued until late July 2015, CMS personnel conducted an "exit interview" on the final day of the survey, at which point they made Felder aware of the deficiencies they had identified.  Thus, Felder began working to correct the identified deficiencies even before CMS issued its final report.  Ms. Benjamin's argument is unavailing.

are not credible.  But it is evident Felder had different expectations for the Dietary Manager.  As noted above, Ms. Benjamin herself contends she had new and different responsibilities under Felder.  So, evidence of positive reviews from a former employer does not make Felder's explanation pretextual.

As to the treatment of the kitchen staff and nurses that troubled Ms. House, Ms. Benjamin put forward testimony from former co-workers who stated they had not witnessed Ms. Benjamin being rude, inappropriate, or uncooperative during their time working together.[2]  A plaintiff can prove pretext by showing the employer's proffered reason is false.  *See Laxton*, 333 F.3d at 578.  But Ms. Benjamin does not dispute that the troubling incidents occurred.  She does not deny raising her voice to the kitchen staff or reacting negatively to suggestions from Ms. House or the nurses.  In short, the proffered evidence does not show that Ms. House's concerns regarding specific incidents were baseless.

Moreover, "[e]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason.  We do not try in court the validity of good faith beliefs as to an employee's competence." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995); *see also Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 371 (5th Cir. 2016) (per curiam); *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 9 (5th Cir. 2009) (per curiam) (citing *Mayberry*, 55 F.3d at 1091); *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165–66 (5th Cir. 1993).  Ms. Benjamin would have to show Ms.

---

[2] Ms. Benjamin argues the district court improperly weighed the credibility of these witnesses.  To the extent the district court suggested this testimony carries little weight because, for example, one former co-worker had also been fired and another had worked with Ms. Benjamin only one day a week, it erred.  Courts may not assess credibility at summary judgment.  *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016).  But even taking this testimony for all it is worth, it does not provide the necessary evidence of pretext.

No. 17-60662

House's concern over her treatment of kitchen and nursing staff was not based on good faith concerns about her competence, and she has not done so.

3.

Ms. Benjamin also argues that personnel changes made after Felder took over the Graceland dietary department are evidence of pretext or discriminatory intent. In 2017 (during discovery in this case), the Graceland dietary department had fewer employees over 40 years old than it had on June 8, 2015 (the day Felder took over). And of the three employees in the dietary department who had their hourly pay decreased under Felder, two were over 40 years of age. From this, Ms. Benjamin would have us infer pretext.

We cannot. While the Graceland dietary department experienced some turnover between 2015 and 2017, the record does not support an inference of pretext. The record shows the dietary department decreased in size from 21 employees in 2015 to 17 employees in 2017. One cook who was 70 years old in 2015 testified she retired voluntarily. Three of the Graceland employees who remained in 2017 were over 50 years old. Indeed, Felder hired a new 55-year-old employee sometime between 2015 and 2017. As to pay changes, though two older employees saw their pay decrease under Felder's management, several older employees received a pay increase.

Even if events that took place long after Ms. Benjamin was fired are pertinent, these personnel changes do not evidence discriminatory animus. Marginal changes in the age makeup of such a small staff do not raise an inference of age discrimination. That is especially true here because one of the older employees retired voluntarily and Felder treated other older employees favorably. *Cf. Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) (noting retention of other employees within the protected class undermines plaintiff's theory of age discrimination).

No. 17-60662

4.

Ms. Benjamin also points to her verified complaint, in which she states, "prior to [her] termination, [Felder] had conducted interviews with all dietary employees except Plaintiff, generally outlining its expectations and any change in job descriptions." The complaint does not say exactly when these interviews occurred, but it appears they were conducted after all the dietary employees had been re-hired by Felder on June 8, 2015.[3] When Ms. Benjamin asked why she "was not being interviewed," Felder assured her it was "nothing to worry about." Ms. Benjamin contends her lack of an interview is evidence Felder did not intend to retain her.

Even assuming the lack of an interview indicates Ms. Benjamin's supervisors did not expect to retain her, she has not shown they made that decision because of her age. Indeed, Ms. Benjamin worked for Felder for just four weeks, and Felder's concerns appear to have arisen quickly. Ms. House discussed Ms. Benjamin's behavior with her own supervisor, Ms. Anderson, at least a week before Ms. Benjamin was fired. In the absence of any evidence of discriminatory intent, the suggestion that Felder was planning to fire Ms. Benjamin all along is no evidence of pretext. *See, e.g.*, *McDaniel v. Nat'l R.R. Passenger Corp.*, 705 F. App'x 240, 250 (5th Cir. 2017) (per curiam) (explaining that even "intentionally" leaving plaintiff "off the interview list" is no evidence of pretext where "[plaintiff] provides no reason to believe that it was for discriminatory purposes"). That Felder supervisors did not interview Ms. Benjamin regarding her responsibilities does not show its stated reasons for firing her are false or otherwise suggest discriminatory intent.

---

[3] It is Ms. Benjamin's burden to show pretext, and she has not pointed us to record evidence clarifying precisely when these interviews occurred. If they occurred before June 8, 2015, then this is no evidence of pretext because Ms. Benjamin *was hired*. Felder's decision to hire Ms. Benjamin without an interview would not suggest pretext regarding her later performance issues.

No. 17-60662

5.

Finally, Ms. Benjamin argues that an "Employee Information Sheet" she filled out on the day Felder hired her—which included a request for her date of birth—is evidence of discriminatory animus.  She says "[t]here is no legitimate, non-discriminatory explanation in the record explaining why Defendant wanted to know the age of an applicant," so Felder must have harbored animus towards older workers.  Ms. Benjamin did not cite this document as evidence of pretext to the district court, and the district court did not consider it.  We will not consider it for the first time on appeal.  *See Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 846 (5th Cir. 2010).

\* \* \*

The judgment of the district court is AFFIRMED.